William D. GILPIN, Claimant–Appellant,

v.

Togo D. WEST, Jr., Secretary Of Veterans Affairs, Respondent– Appellee.

No. 97–7075.

United States Court of Appeals, Federal Circuit.

Sept. 11, 1998.

Rehearing Denied; Suggestion for Rehearing In Banc Declined Oct. 28, 1998.

Kenneth M. Carpenter, Carpenter, Chartered, Topeka, Kansas, argued for claimant–appellant. Of counsel was Richard Showalter.

Luke Levasseur, Attorney, Civil Division, Commercial Litigation Branch, U.S. Depart-

ment of Justice, Washington, DC, argued for respondent–appellee. On the Brief were Frank W. Hunger, Assistant Attorney General, David M. Cohen, Director, Sharon Y. Eubanks, Deputy Director, and Paul S. Padda, Attorney.

Before MICHEL, SCHALL, and GAJARSA, Circuit Judges.

GAJARSA, Circuit Judge.

## DECISION

William D. Gilpin appeals the decision of the United States Court of Veterans Appeals in *Gilpin v. Brown, Secretary of Veterans Affairs*, No. 95–832 (Vet.App. May 21, 1997), which affirmed a May 3, 1995 decision of the Board of Veterans' Appeals ("Board"). Because we hold, under the principles of deference espoused in *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), that the Secretary of Veterans Affairs ("Secretary") permissibly interpreted 38 U.S.C. § 1110 to require "current symptomatology" at the time the claim is filed in order for a veteran to be entitled to compensation for a disability such as Post–Traumatic Stress Disorder ("PTSD") under that statute, we affirm the decision of the Court of Veterans Appeals.

## BACKGROUND

No relevant facts are disputed. The facts of this case have been set out in detail in the Court of Veterans Appeals' decision and will be referred to in this opinion only to the extent necessary for an understanding of the issues that give rise to this appeal. Mr. Gilpin served on active duty in the U.S. Army from July 1965 until July 1968. Mr. Gilpin's separation examination was negative for PTSD. In January 1987, Mr. Gilpin filed a claim with the Veterans Administration ("VA") (now the Department of Veterans Affairs). for disability compensation for a "stress" disorder and other disabilities. In July 1987, the VA denied his claim for ser-

vice-connection for his alleged disabilities, including PTSD. Mr. Gilpin appealed this denial to the Board, which affirmed the VA's decision.

In February 1991, the appellant requested a reopening of this claim for service-connection for PTSD. After considering this request, the VA found that no new and material evidence had been submitted to reopen the appellant's claim for service-connection for PTSD. The appellant then filed a Notice of Disagreement and additional evidence of PTSD. The VA again denied the appellant a reopening of his claim for PTSD. The Board ultimately affirmed the denial of entitlement, concluding that there was "no adequately supported diagnosis of PTSD of record," including no current diagnosis of PTSD.

The Court of Veterans Appeals determined that there was a plausible basis for the Board's finding of no valid diagnosis of PTSD. In denying Mr. Gilpin's claim, the court also stated that (a) 38 C.F.R. § 3.304(f) requires a current diagnosis of PTSD in order to qualify for service-connection benefits and (b) Mr. Gilpin did not have such a current diagnosis. Mr. Gilpin then timely filed this appeal, challenging only the validity of section 3.304(f) in light of 38 U.S.C. § 1110 and other provisions of the veterans' benefits scheme.

## DISCUSSION

We review interpretations of statutes and regulations by the Court of Veterans Appeals *de novo. See* 38 U.S.C. § 7292(a), (c) (1994); *Degmetich v. Brown,* 104 F.3d 1328, 1331 (Fed.Cir.1997). As with any question of statutory interpretation, we begin with the language of the statute itself. *See Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.,* 447 U.S. 102, 108, 100 S.Ct. 2051, 64 L.Ed.2d 766 (1980). Section 1110 provides for compensation to veterans for "service connected" disease or injury. *See* 38 U.S.C. § 1110 (1994). It states, in relevant part:

For disability resulting from personal injury suffered or disease contracted in line of

duty, or for aggravation of a preexisting injury suffered or disease contracted in line of duty, in the active military, naval, or air service, during a period of war, the United States will pay to any veteran thus disabled ... compensation as provided in this subchapter....

*Id.* Furthermore, 38 C.F.R. § 3.304(f) (1997) states that, to establish service-connection for PTSD, the veteran must demonstrate "current symptomatology" of his disability.

Mr. Gilpin argues that this regulation adds an additional burden to the statutory requirement. Mr. Gilpin reasons that the statute only requires that the veteran have a disability, not that the disability be symptomatic at the time service-connection is sought or awarded. Mr. Gilpin contends that such a requirement is not contemplated in the statute and therefore is invalid. As further support, Mr. Gilpin argues that requiring "current symptomatology" for entitlement incorrectly conflates the issue of degree of disability with the issue of entitlement to disability.

The government, relying on *Degmetich,* maintains that Congress intended provisions authorizing benefits for service-connected disability to apply only in cases involving disability on the date of application. The government further argues that without current symptomatology, the Department of Veterans Affairs would have no means for determining that the alleged disability is in fact service-connected. While acknowledging Mr. Gilpin's argument that certain disabilities are entitled to a "zero percent" rating under the Secretary's rating system,[1] the government argues that the practice of assigning zero-percent ratings is consistent with the general requirement that service-connection be granted only in cases where the applicant exhibits current symptomatology.

We begin our analysis by noting that the meaning of section 1110 is not plain on its

face. The statute speaks only of "disability resulting" from injury or disease and payment of compensation to a veteran "thus disabled." The statute does not say "presently existing" or "current" disability; it does not mention current symptomatology. While it is clear that allegations of a future disability are not sufficient for an award of compensation, the statute does not clearly and on its face say whether past disabilities support an award of compensation. Thus, all that can be fairly said about the statute is that it is silent on the matter of when the disabled veteran must be disabled. The parties direct us to nothing in the legislative history of relevance and we have found no guidance in our review of the legislative history as well.

Under these circumstances, our role in analyzing Mr. Gilpin's challenge has been clearly delineated by the Supreme Court. *See Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). In *Chevron,* the Court explained:

> When a court reviews an agency's construction of the statute which it administers, it is confronted with two questions. First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress. If, however, the court determines Congress' had not directly addressed the precise question at issue, the court does not simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation. Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.

*Id.* at 842–43, 104 S.Ct. 2778. The question for us to decide then is whether the require-

---

1. Certain regulations permit assignment of a "zero-percent" disability rating when the current degree of disability of a condition for which

service-connection is established does not meet the requirements for entitlement to compensation.

ment of current symptomatology is a rational and permissible way to fill the "gap" in the statute.[2]

We refer to our analysis in *Degmetich*, a case that analyzed 38 U.S.C. § 1131 (1994) which is identical in all respects to section 1110 but covers disability from injury or disease incurred in "other than a period of war." In *Degmetich*, we held that the requirement of a current disability at the time of application was not an impermissible interpretation of section 1311. *See Degmetich*, 104 F.3d at 1332. Mr. Gilpin attempts to distinguish the "current symptomatology" requirement in 38 C.F.R. § 3.304(f) from the "current disability" requirement which we approved of in *Degmetich*. However, any such distinction is illusory. A current disability cannot exist without some evidence of its existence. Therefore, these two requirements are one and the same for purposes of § 3.304(f).

We find, as we found before in *Degmetich*, that the Secretary's interpretation requiring current symptomatology is supportable when viewed in the context of the other statutes involving the provision of veterans' benefits. Many of the statutes governing the provision of benefits for veterans only allow such benefits be given for disability existing on or after the date of application. *See Degmetich*, 104 F.3d at 1332 (referring to 38 U.S.C. § 5110(a) and 38 U.S.C. § 5111(a)). If Congress had been concerned with awarding compensation to any applicant who had a disability, presently existing or not, then it would not have so restricted the effective date of payments to the period of time after an application has been filed. Similarly, the statutes governing other benefits besides compensation afforded disabled veterans are limited to those veterans who have a service-connected disability at the time of application. *See* 38 U.S.C. § 1710 (1994); 38 U.S.C. § 1712 (1994). Given the structure of the law as a whole, the Secretary's interpretation

of 38 U.S.C. § 1110 as requiring demonstration of symptoms at the time the application is filed cannot be considered arbitrary or unreasonable and thus is not "impermissible." We must therefore accept it. *See Chevron*, 467 U.S. at 844, 104 S.Ct. 2778.

We have considered Mr. Gilpin's other arguments with regard to this issue and find them unpersuasive in the resolution of his appeal. We therefore affirm the Court of Veterans Appeals' decision upholding the Secretary's interpretation of section 1110 to require current symptomatology for PTSD cases.

## CONCLUSION

Accordingly, the decision of the Court of Veterans Appeals is

*AFFIRMED.*

## COSTS

Each party to bear its own costs.

---

2. It is beyond question that the Secretary has substantive rule-making power with respect to the benefits in question here and thus *Chevron* deference applies. *See Merck & Co., Inc. v. Kes-* sler, 80 F.3d 1543, 1549, 38 USPQ2d 1347, 1351 (Fed.Cir.1996) (no *Chevron* deference when agency did not have rule-making authority in relevant area).